# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| Albert Johnson | ) | |
| | ) | **CIVIL ACTION FILE** |
| Plaintiff, | ) | **NO.** |
| | ) | |
| v. | ) | |
| | ) | |
| International Business Machines | ) | **Jury Trial Demanded** |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Albert Johnson, Plaintiff in the above-styled action, and hereby submits this Complaint against Defendant International Business Machines Corporation (hereinafter "IBM" or Defendant).

## JURISDICTION AND VENUE

### 1.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1331 (federal question) based on Plaintiff asserting causes of action against Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). Plaintiff is seeking declaratory relief, injunctive relief, damages, attorneys' fees and expenses of litigation to redress the deprivation of his rights by Defendant

because of its discriminatory and retaliatory treatment of him.

2.

Declaratory relief is sought pursuant to 28 U .S .C. § 2201.

3.

Injunctive relief is sought pursuant to Rule 65, Federal Rules of Rules of Civil Procedure.

4.

Defendant has maintained office space and conducted business within the area encompassed by the Atlanta Division of the Northern District of Georgia, as defined under 28 U.S.C. § 1391(c), for all times relevant to the instant lawsuit, and the unlawful employment practices complained of by Plaintiff are alleged to have been committed in the State of Georgia.  Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. 2000e-5(f)(3).

## **PARTIES**

5.

Plaintiff is a citizen of the United States who, at all times relevant to this Complaint, resided in the State of Georgia.

6.

Plaintiff was an "employee" of Defendant within the meaning of Title VII at all times relevant to this Complaint.

7.

Plaintiff, who is African-American, falls within the protections provided by Title VII and Section 1981 from discrimination based on his race.

8.

Defendant IBM is a New York corporation that may be served by any method permitted by the Federal Rules of Civil Procedure, including personal service upon its registered agent for service of process, CT Corporation System, 1201 Peachtree Street, NE, Atlanta, GA, 30361.

9.

Defendant has continuously employed more than 15 persons and meets the definition of "employer" within the meaning of Title VII.

## ADMINISTRATIVE PROCEDURE

10.

On or about July 16, 2015, Plaintiff filed a timely Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission alleging race and national origin discrimination and retaliation. Such Charge of Discrimination was filed within 180 days of the occurrence of the last act on which this Complaint is based.

11.

This civil action is instituted in the appropriate federal district court within

ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission relating to his Charge of Discrimination against Defendant.

## CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

### 12.

This is a proceeding for a declaratory judgment as to the Plaintiff's rights and for a permanent injunction enjoining the Defendant from maintaining a policy or practice of:

A.   Discriminating against Plaintiff because of his race with respect to compensation, terms, conditions, and privileges of employment.

B.   Limiting, segregating, and classifying Plaintiff in ways that deprive him of employment opportunities and otherwise adversely affect his status as an employee because of his race and national origin.

C.   Retaliating against Plaintiff for exercising his federally protected right to complain about unlawful discrimination in the workplace.

## STATEMENT OF FACTS

### 13.

Plaintiff was employed by IBM from 1996 until February 27, 2015.

14.

Plaintiff's last position with IBM involved working at an IBM Level 2 customer support facility in Smyrna, GA (the Smyrna facility").

15.

Plaintiff's role at the Smyrna facility was in a non-leadership position where he was tasked with resolving high end technical customer escalations and providing IT technical consulting.

16.

Prior to working at the Level 2 customer support facility, Plaintiff worked at an IBM Level 1 facility ("the Level 1 facility") in an Operations leadership position as an Execution Professional preforming in the capacity as Program Manager for the Canada Call Center Operations.

17.

Jim Waters (Caucasian) was the IBM manager who made the decision to transfer Plaintiff to the Smyrna Facility in January 2014.

18.

When Jim Waters transferred Plaintiff to the Smyrna facility he placed Plaintiff in a lower position than he had previously held at the Level 1 facility.

19.

Plaintiff's Level 1 Canada Call Center duties were eventually reassigned to

Dan White (Caucasian), an Execution Professional with very little knowledge or experience of its Operations.

20.

Although Plaintiff was initially given a higher rating by his 1st line manager, Plaintiff's rating was reduced to a 3 by Jim Waters after asking the 1st line manager "had Plaintiff done everything well."

21.

Jim Waters told Plaintiff to "earn the position" of Team Lead at the Smyrna facility.

22.

Other Caucasian employees, who had not done well in key significant areas of their responsibility and without just cause, were not judged in the rating process as harshly as Plaintiff.

23.

Several Caucasian employees were simply assigned to leadership roles by Jim Waters who were less knowledgeable and less qualified for the position than Plaintiff and/or other more qualified African Americans.

24.

At the Smyrna facility Jim Moylan and John Sexton were executing

6

processes that Plaintiff either wrote or assisted in developing.

25.

Plaintiff was never considered for a Team Lead position at the Smyrna facility.

26.

At the time Plaintiff was transferred to the Smyrna facility, Jim Waters knew that IBM would be laying off employees in the Atlanta area in 2014 or 2015.

27.

IBM had not subjected the Lenovo Operations Level 1 Team to layoffs in past years.

28.

Moving Plaintiff to a non-leadership position at the Level 2 Smyrna facility positioned Plaintiff to be a subject of the upcoming layoff.

29.

Mr. Waters transferred Plaintiff to the position at the Smyrna facility to set him up for a bad performance review.

30.

For example, Mr. Waters transferred Plaintiff into the position at the Smyrna facility knowing that some of Plaintiff's new duties would be tasks that were not suited for plaintiff's skill set.

31.

Plaintiff was assigned to a new manager (Bill Moore) in April 2014 without being notified.

32.

Bill Moore did not have any band 6 employees assigned to him and advised Plaintiff that the business would not allow it.

33.

Plaintiff was not credited properly for significant extra assignments, ideas or projects.

34.

After a brief meeting with Bill Moore, Plaintiff heard Mr. Moore tell another employee that "those people think they are entitled."

35.

On January 28, 2015, Plaintiff was notified that he was going to be permanently laid off from his employment with IBM.

36.

In January 2015, Plaintiff inquired to IBM management, in writing, about a job posting for a Program Manager position that had been posted on or about January 7, 2015.

37.

In response to his inquiry, Plaintiff was informed that he could not interview for the aforementioned Program Manager position because he could not meet the college degree requirement.

38.

On or about January 30, 2015, IBM re-posted the aforementioned Program Manager position without the college degree requirement.

39.

Plaintiff was not informed that the aforementioned Program Manager position was re-posted.

40.

Plaintiff was not informed that after his inquiry about the aforementioned Program Manager position, IBM removed the college degree requirement.

41.

Other IBM employees were notified that the aforementioned Program Manager was reposted without the college degree requirement, and they were encouraged to apply for the position.

42.

On January 27, 2015, Plaintiff was given a negative performance review for his work at the Smyrna facility.

43.

Plaintiff was denied the right to dispute his January 2015 performance review rating of "3."

44.

Plaintiff's employment with IBM was terminated on February 27, 2015.

45.

After Plaintiff's termination of employment with IBM, his duties at the Smyrna facility were assumed by Jim Moylan and John Sexton.

<u>COUNT I</u>
<u>TITLE VII - RACE DISCRIMINATION</u>

46.

Plaintiff re-alleges each and every allegation in paragraphs 1 through 45 as though set forth in full herein.

47.

The effect of the policies and practices complained of herein has been to deprive the Plaintiff of equal employment opportunity and to deprive him of income in the form of wages, prospective retirement benefits, and other benefits of employment due to him as an employee on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

48.

All of the acts of the Defendant complained of herein were intentional and were committed with reckless disregard of Plaintiff's federally protected rights.

49.

Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's policies, customs, and the specific acts of discrimination as set forth herein.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

50.

Plaintiff re-alleges each and every allegation in paragraphs 1 through 49 as though set forth in full herein.

51.

Plaintiff is a member of the class of persons protected by the Section 1981 who suffered an adverse employment action based on his race (African American).

52.

Defendant discriminated against Plaintiff with respect to the terms and conditions of his employment based on his race (African American) in violation of Section 1981.

53.

Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's acts of discrimination.

54.

All of the acts of the Defendant complained of herein were intentional and were committed with reckless disregard of Plaintiff's federally protected rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue a declaratory judgment that the Defendant's acts, policies, practices, and procedures complained of herein violate the Plaintiff's rights as secured under Title VII and Section 1981;

2. Grant Plaintiff a permanent injunction enjoining the Defendant, their officers, agents, employees, attorneys, and other representatives, and those acting in concert with them and at their discretion, from engaging in any employment policy or practice which discriminates against employees because of their race.

3. Grant Plaintiff judgment against the Defendant for back pay, front pay and other benefits and opportunities of employment of which he has been deprived by reason of Defendant's violations of Title VII and Section 1981;

4. Grant Plaintiff compensatory and punitive damages for Defendant's violations of Title VII and Section 1981;

5. Grant Plaintiff attorneys' fees, costs, and disbursements;

6. Grant Plaintiff trial by jury; and

7. Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted this 2nd day of December 2015.


**s/Robert C. D. McDonald**
Georgia Bar No. 489600
Attorney for Plaintiff

The Law Offices of Robert C. D. McDonald, P.C.
6340 Sugarloaf Parkway, Suite 200
Duluth, GA 30097
(770) 662-1550 - Telephone
(770) 662-1561 - Fax
rmcdonaldlaw@ceocenters.com